Case 1:19-cr-00507-PAB Document 66 Filed 01/16/20 USDC Colorado Page 1 of 12
FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
JAN 16 2020
JEFFREY P. COLWELL
CLERK

USA
v.
Joshua Gess

19CR0507

## Memorandum In Support of Defense Motion To Suppress Doc. #29

**\*1.** On 10/28/19 CPO Stegner logged in CWISE he recieved an <u>anonymous</u> tip from an unnamed "Constituent Services Coordinator" see Inv00000552 Paragraph 3, "notes". - "CPO attempting to vet information"

Now, the anonymous tip proves the first two pieces of information are false, Paragraph 3 states tip alleges (defendant) doesn't have a license or registration, Stegner verified this to be untrue. The first two pieces of information are proven false, thus the reliability of tip already fails standard to determine Probable Cause. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an ANONYMOUS TIP alone, seldom demonstrates the informants basis of knowledge or veracity" <u>Florida v. J.L.</u>, U.S. 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed. 2d 254 (2000). The first two allegations proved false immediately upon Stegners "vetting" - this would not sustain an application for warrant or probable cause.

**\* Subterfuge For Criminal Investigation \***

The G.C.S. is a seperate branch of government. Therefore soliciting parole to circumvent normal warrant or investigative processes violates 4th Amendment prohibition of unlawful search and seizure. Parole may not be used for investigation tool of another agency to circumvent 4th USCA.

Colorado S.Ct elaborated parole searches "may not be conducted simply as a subterfuge for criminal investigations. They may NOT BE DONE for the prime purpose of circumventing the ordinary CONSTITUTIONAL processes for the CONVENIENCE of law enforcement officers in the course of their investigation." Id at 782, quoting <u>People v. Way</u>, 65 Misc. 2d 865, 319 N.Y.S. 2d 16, 21 (Nassau Cnty Ct. 1971) The court also took time to rummage the quoted Way case, apparently as an example of what would violate the second requirement:

Pg. II Memo. In Support of
Motion To Suppress

"In Way, police contacted the parole officer and told him that his parolee was a suspect in a robbery. THE PAROLE officer took no steps to visit or interview his parolee, UNTIL THE POLICE officer again two weeks later and requested that he accompany them on a search of the parolees house for THE PURPOSE OF investigating the robbery. The COURT found (250 F.Supp. 3d 815) that the parole officer had become "NOTHING MORE THAN THE ALTER EGO of the DETECTIVES" stating "This case DOES NOT present the usual situation where a parole officer may engage the services of the local policeman on the beat to protect him while he is engaged in searching a parolee or his home. REFERENCE to the facts found herein demonstrate that the police were NOT mere bystanders but THAT THEY INSPIRED, INITIATED, ARRANGED and ACTIVELY PARTICIPATED in every phase of the search and seizure." Way, 319 N.Y.S 2d at 23, 24. Id. at 982 N.12.3.

Further Inv. 000000I ATF Agent Anderson makes it clear he was there reference a (G.C.S.) Governors Constituent Services Complaint. Andersons statement shows ATF involved G.C.S. not a routine "home visit" but rather furtherance of other agency investigation.
Vance Roper from ~~G.C.S.~~ Colorado Joint Budget Committee, present for search/seizure - conviently left out of Andersons report Inv. 1-6 (11-4-19 written)
Andersons second report Inv. 32-34 leaves ~~GCS~~/Roper out, conviently.
Inv. 152 "In reference to GCS complaint" ATF identifies self as ATF assisting re: GCS - not routine "res check" - active investigation.
Inv. 297 Paragraph 3 Lines 7-8 - Vance Roper from Colorado Joint Budget Committee approached the ~~house~~ residence, yet further evidence of outside agency using parole as a tool.
Inv 298 took over watching "Jensen and McKinley" alongside Vance Roper. Shows Ropers Participation

### Residence Searched

The property located at 8008 Pierson Ct., Arvada, CO 80005 belonged to Trenda Martin.

### Bedroom Searched

Bedroom where alleged drugs and guns found belonged to Brittny Allen.

### Parole Sponsor Agreement

No Parole Sponsor Agreement on file for 8008 Pierson Ct.

Last

### Residence of Record

"ROR" 6-17-19 Homeless

ROR 6-17-19 Homeless Per Cond. 2 of Parole Agreement, defendant gave address change as homeless, see Inv. 00000029 "Parole Agreement" Condition 2. "Parolee Residence shall establish a "ROR"... Parolee shall not change his residence without PRIOR notice to his CPO" — defendant <u>never</u> changed his ROR from homeless to 8008 Pierson Ct.

ROR change on file 3/29/19 to 9200 W. Wagon Trail Dr.

ROR changed from 9200 Wagon Trail to Homeless 6-17-19

6-25-19 ROR Homeless

7-31-19 Office Visit CPO Leopold Malabanan ROR Homeless

8-15-19 Office Visit CPO Leopold Malabanan ROR Homeless

8-29-19 Office Visit CPO Leopold Malabanan ROR Homeless

9-12-19 Office Visit CPO Leopold Malabanan ROR Homeless

9-26-19 Office Visit CPO Leopold Malabanan ROR Homeless

10-10-19 Office Visit CPO Leopold Malabanan ROR Homeless

Pg. IV Memo In Support
of Motion to Suppress

10/24/19 - 1st Office Visit With CPO - ROR - "Same homeless, calling in address" Call cwise every night with address, a directive because defendant homeless

10/24/19 "Offender currently living out of his vehicle, seen at SMRO (parole)"

10/24/19 Office Visit CPO Matthew Stegner verbatim - "OFFENDER SEEN IN ROR, RED EXPLORER"

Defendant never changed address per Parole Agreement No. 2, from 6-17-19 to 10-24-19 - there are at LEAST (if not 100 notes) that parole recognizes ROR as homeless Red Ford Explorer 12 seperate face to face meetings with CPO's Maldonen and Stegner. Even further CPO Stegner verifies Red Explorer ROR on 10/24/19. On the date in question 10/28/19 with NO ADDRESS CHANGE DONE PER AGREEMENT signed by defendant AND parole, parole falsly changed status of homeless to 8008 Pierson Ct., not because defendant changed address but because Stegner was investigating an anonamous tip with GCS at 11:13 AM. 10/28/19 11:13 AM defendant listed homeless - anonamous tips first two tales are found false (involving defendants license/registration) - invalidating tip and showing some vindictiveness in attempt to get defendant falsely in trouble; 10/28/19 11:38 AM Stegner on his own falsely changed defendants address to address in question. In a 25 min span Stegner to circumvent 4th USCH falsified records Theres NO MENTION ANYWHERE OF DEFENDANT CHANGING HIS ADDRESS FROM HOMELESS TO 8008 Pierson, as is required before parole changes address.

Being homeless sleeping in Red Explorer in geographical proximity doesnt substantiate ROR or authorization for warrantless search of a residence. Defendants residence homeless.

## Lack of Warrant

"Gov. has burden of showing probable cause to believe crime had been or was being committed both in obtaining warrant prior to arrest and sustaining legality of arrest without warrant. United States v. Rivera, 321 F.2d 704 (2d Cir. 1963)" Probable cause failed. Parole, ATF, GCS, Vance Roper all failed to even apply for warrant. Defendant not in any way thought to be in flight - therefore DAP, ATF, Roper, JCSO all could of attempted to obtain a search warrant and failed to.

Anonamous Tip not credible or reliable. United States v. Enser, 472 F. Supp. 490 (D.N.J. 1978).

Defendant notes there is no 10th Circuit case directly on point and he argues United States v. Grandberry (2013, CA9 Cal) 730 F.3d 968 is on point and persuasive law, "Where officers arrested defendant and searched apartment BASED ON PAROLEE status, suppression was warranted because defendant had standing by virtue of defendants status as overnight guest, officers' observations were insufficient to establish probable cause that defendant lived there, and search was NOT PERMITTED UNDER provision of defendants parole search condition authorizing searches of any property under defendants control. United States v. Grandberry (2013, CA9 Cal) 730 F.3d 968.

Defendant had reasonable expectation of privacy. This was not a traditional "res check". It was targeted, based on outside agencies investigation involved armed intrusion, warrantless search of a residence not defendants.

CPO's, ATF, Vance Roper illegally entered 3 closed doors. 1 area marked private entrance, private residence with a closed door, all alleged items of evidence were concealed in closed containers. All persons in the home were removed from searched area after being handcuffed behind there back in a seperate room.

Page 4 Memo in Support
of Motion to Suppress

## Legal Standard

Parole may search defendants POR- Red Explorer. No law allows CPOs to search at will private residences.

### 4th USCA

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. Suppression of evidence is an appropriate remedy when the search and seizure violates a persons constitutional rights. United States v. Gama-Bastidas, 142 F.3d 1233, 1238 (10th Cir. 1998)

### Parole

Acceptance of parole conditions generally is not a waiver of all 4th USCA amendment rights. Huntley, 371 N.E. 2d at 798 - The standard authorization in a parolees release "is not to be taken as an unrestricted consent to any and all searches or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures (Knights, 534 U.S. at 118-19).

### Failed to obtain Warrant

In Tropiano v. United States (1948) 334 US 699, 92 L. Ed. 1663, 68 S. Ct. 1229, it was held that where federal agents had sufficient opportunity to obtain a search warrant, their search of a building and seizure of property used in connection with the illegal distilling of liquor could not be justified as an incident to a lawful arrest of the defendant.

### Search of a Residence

The Supreme Ct. has stated in unying terms that "physical entry of the home is the chief evil against which the wording of the 4th Amendment is directed.

### Parole

Simply because defendant on parole insufficient grounds for warrantless search or to assume defendants ownership of illicit items. For unknown reasons only defendant arrested. "Where as here, a defendant found in a jointly occupied room with others and not in actual possession of the firearm, the defendants presence in the room and proximity to the firearms is not sufficient to infer intent. Moreover the Government must also show a nexus between the defendant and the firearm - specifically, that the defendant had knowledge of and access to the firearm. United States v. Benford, 875 F3d 1007, 1015 (10th Cir. 2017) - Here parole violated search provisions, then despite it being anothers residence, filed on defendant.

### Immediate Control

Defendant handcuffed behind his back nude, in a seperate room than alleged evidence seized from. If somehow under every violation of law the illegal entry through three closed doors, marked private residence survives suppression, once parole handcuffed defendant, Allen and Falconer were all moved upstairs approximately 150-200 feet on another floor of the residence with no access to the area where alleged items found, all underneath a very large California King Size bed. Once removed, no access remotely feasable. Not to mention Gess, Allen and Falconer were all taken into custody in the living room, none of the parties were anywhere near lunge and grab doctrine at their arrest point, coupled with the volume of officers present and being cuffed behind backs and moved to another floor of a 7,000 sq ft. house there was no officer safety concern.

ATF Federal Agent Anderson in his own words states, Inv. 2, "Once the house was secure" Anderson clarifies on Inv. 33 Paragraph 3 Line 5 "deemed the house safe".

Inv 33 Paragraph 4 Line 1 "All parties were brought upstairs" - nobody on the lower level of the house at all.

The area within the "immediate reach or control" of an arrestee is the area into which the person might lunge for a weapon or to destroy evidence. Accordingly the arrest of a person in a three bedroom home does not justify a search of the entire premises. Again - defendant ARRESTED in living room, Allen arrested in living room - neither parties had access to southeast bedroom. "The search is no longer an incident to arrest where first no probable cause to arrest defendant existed until after 4th Amendment violations, second the defendant was arrested taken into custody seperated from basement, there was no risk that he could grab any weapons or destroy any evidence that were previously in the lunging area.

Parole, ATF, Roper, JCSO could have secured the area and attempted to obtain a search warrant if the anonymous tip substantiated probable cause to a judge. The "scene" was contained. Once a person arrested in a persons home is removed from it, the justification vanishes for a search of closets and other spaces immediately adjoining the place of arrest. Defendant arrested in living room. Bedroom then falls into category of adjoining.

~~Nobody Once defendant arrested by police the Parole Officers was longer search within the house until~~

In Chimel v. California (1969) 395 US 752, 23 L. Ed 2d 685, 89 S.Ct 2034, reh den, 396 US 869, 24 L. Ed ~~685~~ 2d 124, 90 S.Ct. 36 where THREE police officers, after arresting the defendant in his home ... search of entire home ... went far beyond his person and the area from within which he might have obtained either a weapon or something which could have been used as evidence against him... Since there were no constitutional justification in the ABSENCE of a search warrant, for extending the search beyond that area, the scope of the search was unreasonable under the 4th & 14 USC4 "

## Gant / Chimel

In applying Gant and Chimel it was unreasonable to believe defendant could have gained access to a weapon or evidence in the basement when handcuffed surrounded by officers in the upper level.

"We look to the following factors to determine whether an area searched is within an arrestees grab area under Chimel: (1) whether arrestee is handcuffed; (2) the relative number of arrestees and officers present; (3) the relative positions of the arrestees, officers, and the place to be searched; (4) the ease or difficulty with which the arrestee could gain access to the searched area. United States v. Parra, 2 F. 3d 1058, 1066 (10th Cir. 1993)

1. Det. cuffed behind him.
2. 10 officers (maybe 8)
3. Det, all parties cuffed upstairs
4. Det, nor any party could access the basement.

"We have similarly rejected a search where defendant was handcuffed behind his back and could therefore not reach the inside of his bureau drawers, nightstand, or under his bed." See United States v. Baca, 417 F.2d 103, 105 (10th Cir. 1969) See also United States v. Leo, 792 F.3d 742, 750 (7th Cir. 2015) - holding that a backpack was not in the defendants immediate control after an investigatory stop where his hands were cuffed behind his back, - "reasoning it was inconceivable that the defendant would have been able to lunge for the bag, unzip it and grab the gun inside."

Here Mr. Gess was nude and on a whole different level of the house, it certainly is inconceivable Mr. Gess could have teleported to the basement bedroom.

Arizona v. Gant 556 US 332, 129 S.Ct. 1710, 173 L.Ed 2d 485, 2009. While Gant reflects an automobile the length the S.Ct. went to define search after restraint in cuffs compared to Mr. Gess scenario goes to show, nothing is admissable in Gess' case by law

XI

for Gess was from the room searched), Gess' restraint and amount of officers present.

According to Court which is governing S. Ct. precedent;
"If there is NO POSSIBILITY that an arrestee could reach into the area that law enforcement officers SEEK TO SEARCH, BOTH JUSTIFICATIONS for the search-incident-to arrest exception are absent and DO NOT APPLY." Arizona v. Gant, 556 US 332, 129 S.Ct. 1710, 173 L.Ed. 2d 485, (2009)

Therefore defendants motions to suppress must succeed and defendant moves for dismissal of all counts based on suppression of all illegally obtained evidence, with prejudice.

Defendant asks the Court much like the false allegations of 118 grams of alleged meth, that was never tested, neither is this search or seizure lawful. An example of rogue law enforcement tunnel visioned on a party solely for his parolee status.

Wherefore in interest of Due Process, the laws of the United States and judicial integrity defendant supports his motion to suppress with this memorandum.

Respectfully,

Joshua Gess

Attached is the party whos home it was that was searched statement.



Colorado Board of Parole, October 30, 2019

My house is located at 8008 Pierson Ct. Arvada CO. 80005. Mr. Joshua Gess was allowed from time to time to park a Red Ford Explorer in the Driveway ONLY in which he was allowed to sleep. Mr. Gess did not rent a room from me nor did Mr. Gess live inside the house.

On October 28, 2019 Denver Parole Officers entered my home illegally neither did they have consent nor permission to enter my home. At no point have I ever nor do I give Denver Parole or any Law Enforcement consent to search my home. Not only did they search unlawfully, the forced entry illegally as well.

Parole then proceeded to violate the rights of my renter Brittany by searching her room and area of the house without authorization consent or permission.

Due to further civil legal action I offer nothing further at this point

Sincerely,
X_____
Ms. Trenda Martin



Joshua Goss
45549013
9595 W Quincy Ave.
Littleton, CO 80123

1-12-20

Legal
1-12-20

United States District
901 19th St, A105
Denver, CO 80294

1-12-20

CORRECTIONAL SYSTEMS, INC.
FEDERAL CORP.
9595 WEST QUINCY AVE LITTLETON CO 80123

DATE/INITIALS 1/13/20

THE ENCLOSED LETTER WAS PROCESSED THROUGH PROCEDURES FOR FORWARDING TO YOU THE LETTER OPENED NOR INSPECTED. IF THE WRITER RAISES A MATTER OVER WHICH THIS FACILITY HAS JURISDICTION, THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.