IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 19-cr-00507-PAB-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JOSHUA DAVID GESS,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Reconsider Detention Order** [#152] (the "Motion to Reconsider"), the Defendant's Letter, which the Court has construed as a **Motion for Order** [#158] (the "Motion for Order"), the Defendant's **Motion for Hearing** [#166], the Defendant's **Supplement to Motion to Reconsider Detention Order** [#174] (the "Supplement") (collectively, the "Motions") and the Government's **Response to Motion to Reconsider Detention Order** [#179]. The Motion to Reconsider, Motion for Order and Motion for Hearing have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCrR 57.1. The Court has reviewed the pleadings, applicable law and entire case file and is fully advised in the premises. For the reasons set forth below, the Motions are **denied**.

## I. Background

In December of 2019, a grand jury indicted the Defendant on one count of

possession of a firearm/ammunition by a prohibited person, one count of possession with intent to distribute 50 grams and more of methamphetamine, and one count of possession of a firearm in furtherance of a drug trafficking crime. [#1].  At the detention hearing held on December 13, 2019, the Defendant did not contest detention because he was subject to a parole hold by the State of Colorado. [##10,11]; *see also Supplement to Motion to Reconsider* [#174] at 3.  The Defendant was, therefore, remanded to the custody of the United States Marshal, and was ultimately confined at the Federal Detention Center ("FDC") in Englewood, Colorado, pending trial or disposition of his case [#16].

Within a short time after he began his pre-trial detention, the Defendant began to contend, among other things, that he should be released for a variety of reasons, including that he has serious health issues which are not being properly addressed by the Bureau of Prisons.  *See, e.g., Motion for Review and Amendment of Release Order* [#23], filed December 30, 2019; *Amended Motion for Review and Amendment of Release Order* [#35], filed January 6, 2020;  *Letter from Joshua David Gess* [#51], filed January 14, 2020; *Letter from Joshua David Gess* [#62], filed January 15, 2020; and *Motion for Immediate Release from Custody* [#63], filed January 15, 2020.  By superseding indictment dated January 23, 2020, the Defendant was charged with one count of possession of a firearm/ammunition by a prohibited person, one court of possession with intent to distribute 5 grams and more of methamphetamine, and one count of possession of a firearm in furtherance of a drug trafficking crime. [#86]. The Defendant continued to file documents regarding his allegedly inadequate medical care (*see, e.g., Letter from Joshua Gess* [#132], filed February 13, 2020; *Motion for Status Conference* [#149], filed March 25, 2020), until his attorney filed the Motion to Reconsider [#152] at issue here on April 22, 2020.

In the Motion to Reconsider [#152], the Defendant argues that "the state of COVID-19" at FDC, "when coupled with his asthma and other health conditions, provides a compelling reason" for his release under the Bail Reform Act. *Id.* at 2-3. The Motion devotes several pages to argument about the inevitability of the spread of the virus at FDC. *Id.* at 4-7.  Defendant further asserts that he is not a flight risk because he can be released to the custody of his aunt, who is willing to serve as a third-party custodian, and that his risk of danger to the community is not outweighed by the risk to him of contracting the virus while incarcerated.  He also contends that he will drain resources unnecessarily if he remains detained, that he is newly sober, and that his criminal history shows little propensity for violence. *Id.* at 8-9.  Finally, Defendant asserts that even if he has not shown by clear and convincing evidence that he is not a flight risk or a danger to the community under 18 U.S.C. § 3142(g), he is nevertheless entitled to "temporary release" under section 3142(i) of the Bail Reform Act "for another compelling reason," which is the presence of COVID-19 at FDC. *Id.* at 9-12.   In the Motion to Reconsider [#152], defense counsel noted that she did not have copies of the Defendant's medical records, "but will supplement this morning when those records are received."  *Id.* at 3, n. 3.

By Order dated the same day, April 22, 2020, the Court required Defendant to supplement the Motion to Reconsider [#152] with medical evidence of his asthma, and required the Government to respond to the Motion within three business days of the filing of any supplement. [#154].  Defendant's counsel subsequently filed a Motion to Withdraw [#155], which prompted Defendant to file a Letter [#158] pro se, in which he stated that the following issues were "left out" of the Motion to Reconsider: (1) the Defendant "never got a detention order" after the superseding indictment, he reserved his right to reopen the

-3-

detention issue at his original detention hearing, and he is requesting "a formal detention hearing;" (2) his counsel "has record of tx. [sic] for asthma but has not submitted to the Court [sic]," he is prescribed Albuterol "which is an inhaler for Asthma," he has been diagnosed with Reactive Airway Disease but no tests have been performed despite appropriate medical referrals and recommendations; (3) he had a "colon resection" on an unspecified date which required surgical follow-up in December of 2019 that was not provided, he has multiple health problems as a result and "the FDC cannot treat me;" (4) due to "numerous spinal conditions" and two shoulder surgeries he requires "orthotics, standing restrictions, bedding and medication (non narcotic) as well as completing my spinal diagnostics for end result in either fusion or nerve ablation;" (5) he wants the Court to order his attorney to produce all of his medical records from "Sheridan Health, New Health and Sally Jobe;" and (6) he is "in extreme pain everyday with life threatening colon issues [he] believes the court could consider when looking at [his] detention. There has been new discovery that directly changes the likelihood of conviction that shows the Grand Jury was provided misinformation regarding veracity of the facts of [his] case." *Id.* at 1-2. Attached to the Letter is a "Bureau of Prisons Health Services Medication Summary Historical" for Defendant dated May 4, 2020, indicating that he is prescribed "Albuterol Inhaler HFA for shortness of breath" as well as other medications not relevant here. *Id.* at 4.

Although it does not pertain to the Motion to Reconsider [#152], it is worth noting that the Defendant also sent a letter to the Honorable Christine M. Arguello, a United States District Judge not assigned to his case, to request copies of her writings opposing "the purity enhancements relating to meth" and contending that he is incarcerated "in a routine

drug and gun case . . . not because of my own specific conduct but because I was on parole." *Letter from Joshua David Gess* [#159] at 1. A few weeks later he sent another letter to the Court referring to his "urgent" medical needs and stating that the BOP continued to deny him medical care for his chronic medical needs and attempted to coerce him to plead guilty in exchange for treatment. *Notice to Court* [#161] at 1. Three days later he filed a document which the Court construed as a Motion for Hearing [#166], in which he asserted that he suffers from "ADHD" and had "never had a detention hearing nor did or do I waive such," his medical needs necessitate a detention hearing, he is not receiving appropriate medical care and was told by an unidentified person that he will not receive care until he pleads guilty and is "transferred to BOP," he filed a grievance regarding medical treatment on which no action was taken, and he was refused a non-elective procedure because he is an inmate and at high risk for COVID. *Id.* at 1.

On June 16, 2020, Defendant's counsel filed a Supplement to the Motion to Reconsider [#174]. In the Supplement, the Defendant asserted that he suffers from "acute respiratory issues that put him at higher risk of severe illness or death if exposed to COVID-19," "he suffers from another medical condition that, while not a COVID-19 risk factor, is not being treated," and other circumstances have changed since his detention that support his release. *Id.* at 1. Regarding the changed circumstances, he stated that the state parole hold has been lifted, lab testing revealed that the methamphetamine allegedly possessed by him amounted to a mere 8 grams, which led to the superseding indictment, his aunt is willing to serve as a third-party custodian, and he has work available on release. *Id.* at 3. He asserts that "he has shown by clear and convincing evidence that he is neither a flight risk nor a danger to the community." *Id.* The following exhibits are attached to the

Supplement:

- a copy of a record of the Defendant's visit to an Urgent Care facility dated September 2, 2019 reflecting that the Defendant self-reported a history of asthma, and in which the "assessment and plan" refers both to "Mild Persistent Asthma without complications" and "Severe, intermittent asthma." The report does not contain the name of a medical professional [#174-1];

- a copy of a label from the Defendant's prescription for Prazosin dated April 2, 2020 with the following unidentified handwriting: "Hypertension e.g. High Blood Pressure" and a copy of a label from the Defendant's prescription for Albuterol Inhaler HFA dated April 28, 2020 [#174-2];

- a copy of a June 15, 2020 email from an Assistant Chief Deputy U.S. Marshal stating that there are 21 inmates at FDC who have tested positive for the COVID-19 virus, 23 inmates in precautionary isolation with no symptoms, each new inmate is being tested during intake and again after 14 days, and "4 study order pretrial inmates are COVID Positive/Quarantined in A-Pod." [#174-3];

- a copy of a patient visit note by Dr. David Longcope regarding the Defendant dated April 26, 2019. The patient note reflects that the visit related to Defendant's laproscopic right colectomy for benign polyp which occurred three months earlier. Under social history, the note reads: "No tobacco use and smoking status: Never smoker." Nevertheless, on the following page of the note Dr. Longcope "ordered intervention and counseling on cessation of tobacco use" and "recommended continued observation" regarding the Defendant's condition post-colectomy. [#174-4];

- a copy of a BOP Health Services Clinical Encounter report dated December 31, 2019 on which the Defendant has apparently circled the words "multiple level DDD in the lumbar spine," "looking at nerve ablation later," and "needs follow up colonoscopy." The report reflects a "target date" for an "urgent" colonoscopy of February 28, 2020 [#174-5];

- a copy of a BOP Health services Clinical Encounter report dated April 2, 2020 on which Defendant has apparently circled "approved to go out for follow up colonoscopy after bowel resection." The report further states "No GI side effects, no bowel or bladder control problems." [#174-5]; and

- an email from a United States Marshal Service officer to the

-6-

> Defendant's attorney dated May 14, 2020 stating that the Defendant was taken to Rose Medical Center for a colonoscopy on that date but "denied entry stating he was considered high risk, and that his procedure was not deemed urgent" [#174-6];

The Government opposes the Defendant's request for release on conditions, pointing out that although the Defendant cites in support "the pandemic itself, his personal risk from it, positive cases at FDC Englewood, other medical problems, the superseding indictment, and the fact that there is no longer a state parole hold request with the U.S. Marshal Service," he fails to explain how such information is "material to the question at issue for detention – whether any conditions of release can reasonably assure the appearance of the defendant and the safety of others in the community." *Response* [#179] at 1. The Government further contends that new information relating to COVID-19 is not material to the detention issue, and even if it were, the Defendant fails to demonstrate any elevated personal risk. It asserts that the other "new" information offered by the Defendant regarding his medical conditions, the lifting of the state parole hold and the superseding indictment is not relevant to the detention issue. *Id.* at 3-8. The Government argues that even were the Court to conclude that the issue of detention should be revisited due to "new" information, the Defendant nevertheless should be detained under the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142. *Id.* at 9-11. Finally, the Government contends that the Defendant has failed to establish compelling reasons for his release under 18 U.S.C. § 3142(i). *Id.* at 11-14.

## II. Discussion

The Bail Reform Act, 18 U.S.C. § 3142(f)(2)(B), specifies that a detention hearing "**may** be reopened . . . **if** the judicial officer finds that information exists that was not known

to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." (Emphasis added). Section (g) of the statute explicitly identifies the factors which the Court must consider when assessing whether a defendant is a flight risk and/or a danger to the community, which are the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and his history and characteristics, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, and the nature and seriousness of the danger that would be posed by his release. 18 U.S.C. §3142(g)(1)-(4). Hence, the factors set forth in section (g) must be the starting point for the determination as to whether a defendant has presented new information that is *material* to the Court's assessment of whether he is a flight risk and/or a danger to the community.

The Court first notes the permissive language of the statute (i.e., a detention hearing "*may* be reopened"), as well as the lack of authority for the Defendant's contention that he is entitled to a hearing regardless of the Court's assessment of whether material information has been presented or not. The plain language of the statute belies that contention, as it specifies that the Court may reopen a detention hearing if the Court finds that material new evidence relating to the suitability of bond exists. As explained below, the Court does not find that a hearing is warranted in this case.

The Court next turns to the issue of whether the new information offered by the

-8-

Defendant is material to assessment of his suitability for release on bond.  First, information regarding the Defendant's health problems and the existence of COVID-19 at the FDC has limited relevance to the bond determination, for several reasons. First, nothing in the Bail Reform Act explicitly directs the Court to consider a defendant's overall physical health or risks to his health from incarceration when determining whether he should be released on bond.  Second, even were the Court to consider the Defendant's physical health, his evidence only makes apparent his level of unhappiness with the medical care he has received at FDC.  The BOP's alleged failure to respond to a grievance regarding the Defendant's medical treatment may provide him with civil remedies, but is not related to whether he is a flight risk or a danger to the community.  In fact, nothing in the Defendant's medical records convincingly demonstrates that he has not received adequate care or that his life is somehow in danger, as nothing in the information provided to the Court infers that he suffers from life-threatening health problems.  Moreover, information provided by the Government about steps taken by the BOP to identify and isolate COVID-19 positive inmates, when compared to the wide spectrum of responses to the disease taken by the general public (from doing nothing to wearing masks, getting tests and self-quarantining), may be interpreted to suggest that the risk of contracting the disease is lower in prison. Regardless, the Court finds that information relating to the Defendant's health issues and the COVID-19 virus is not material to the analysis required under the Bail Reform Act.

Third, the Court further finds that information related to the release of the state parole hold on the Defendant is only slightly material to the Court's determination here, because the existence of state proceedings regarding the Defendant does not bear directly

on whether he is a risk of flight or a danger to the community.

Fourth, the remaining information offered by the Defendant, though material to the detention analysis, is outweighed by other relevant factors or considerations. For example, the fact that the Defendant's aunt is willing to serve as a third-party custodian is not meaningful without further information regarding her age, health, relationship with the Defendant, and living situation; nor is the Defendant's unembellished contention that he has work available on release. The fact that the pending charges against the Defendant were amended to reflect possession of a lesser amount of methamphetamine does not change the fact that he remains charged with using a weapon in furtherance of a drug trafficking crime, which makes him a danger to the community. Moreover, the Government's explanation that after forensic testing, the Defendant was allegedly found with a significant quantity of a "cutting agent" used to dilute methamphetamine for the purpose of increasing the amount available for sale explains the charges against him relating to drug dealing and emphasizes the danger to the community that would be posed by his release. See *Response* [#179] at 8.) The Defendant's alleged new sobriety, though laudable, is far from trustworthy based on his extensive history of drug and alcohol rehabilitation, as well as his previous guilty pleas to possession of a controlled substance with intent to distribute and conspiracy to distribute/manufacture a controlled substance. *See Pretrial Services Report* [#27] at 3, 9, 10. Moreover, despite his contention that his criminal history shows little propensity for violence, the Defendant pled guilty to assault, a felony, in 1994 at age 18, in exchange for dismissal of charges of first degree assault with a deadly weapon and attempted first degree murder. *Id.* at 4. He pled guilty to domestic harassment-

strike/shove/kick in 2001 at age 25.  Charges of carrying a concealed weapon and possession of a defaced firearm were dismissed in exchange for his guilty plea to a drug offense in 2014.  *Id.* at 10-11.  Eight counts of possession of a weapon by a previous offender were dismissed when he pled guilty to first degree aggravated motor vehicle theft and possession of methamphetamine in 2014.  *Id.* at 11.  Indeed, the Defendant's lengthy criminal history reflects a lifetime of preying on others, which emphasizes his unsuitability for release.  In addition, he has failed to appear on 20 occasions, which exacerbates the risk that he will flee.  *Id.* at 14.

Finally, the Court addresses the Defendant's contention that he is entitled to temporary release under 18 U.S.C. § 3142(I) for another "compelling" reason.  Having reviewed each of the "reasons" offered by the Defendant at length above, the Court finds none of them, singly or in combination, compel the Defendant's release on bond.

### III. Conclusion

For the reasons set forth above, the Motions [#152, #158, #166] are **DENIED.**

Dated:  August 19, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge